# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN HOLGUIN, | Case No. 1:15-cv-00753-SAB |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 13, 19) |
| Defendant. | |

**I.**

**INTRODUCTION**

Plaintiff Ruben Holguin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hypertension, acute right scapular fracture, lymphadenopathy, fatty liver, mild splenomegaly, human immunodeficiency virus ("HIV"), diabetes mellitus, chronic liver disease, cirrhosis, affective disorder, and drug abuse. For the reasons set forth below,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

Plaintiff's Social Security appeal shall be denied.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on December 13, 2011. (AR 59, 101.) Plaintiff's applications were initially denied on June 20, 2012, and denied upon reconsideration on January 29, 2013. (AR 111-144, 146-149, 152-155, 158-162.) Plaintiff requested and received a hearing before Administrative Law Judge Daniel G. Heely ("the ALJ"). Plaintiff appeared for a hearing on September 10, 2013. (AR 27-58.) On October 25, 2013, the ALJ found that Plaintiff was not disabled. (AR 6-21.) The Appeals Council denied Plaintiff's request for review on March 30, 2015. (AR 1-3.)

### A.     Relevant Hearing Testimony

Plaintiff testified at the September 10, 2013 hearing. (AR 30-52, 53-54.) Plaintiff attended school through the eleventh grade and completed beauty college in 1983. (AR 31.) Plaintiff worked as hair stylist about seven hears prior to the hearing. (AR 53-54.) Plaintiff was concerned about cutting himself and passing HIV on to his clients. (AR 48.) In 2009, Plaintiff worked as in home health support services for his aunt for two months. (AR 32-33.) Plaintiff has looked for work but has been unable to find a job. (AR 33-34.) Plaintiff has been arrested for petty theft and has served a couple days in county jail. (AR 38, 39-40.)

Plaintiff is homeless and on occasion his ex-boyfriend allows him to go over and shower and stay at his house. (AR 40-42.) He has another friend that also allows him to stay at his house. (AR 42.) When staying with his friends Plaintiff is able to prepare food, do laundry, and wash dishes. (AR 43.)

Plaintiff has been diagnosed with HIV and is waiting to be put on medication. (AR 34.) Plaintiff does not take any medication for mental health issues. (AR 47.) Plaintiff's HIV causes him to sleep a lot, about ten to twelve hours per day. (AR 35, 49.) He gets bladder infections and has to take antibiotics. (AR 36.) Plaintiff has had incontinence problems the past year and is being referred to a urologist. (AR 49-50.) Plaintiff is a type two diabetic and has numbness in

2

his feet. (AR 36.) Plaintiff does not take insulin and the last time he checked his blood it was fine. (AR 37.)

Plaintiff smokes on and off. (AR 37.) A pack of cigarettes will last him a month to a month and a half. (AR 37.) Plaintiff does not drink alcohol or use any illegal drugs. (AR 37.) Plaintiff used marijuana in the past to relax himself and last used two months prior to the hearing. (AR 37-38.) Plaintiff has not used any other illegal drugs over the past year. (AR 38.)

Plaintiff does not bend or lift much. (AR 43.) He does not watch television. (AR 43.) If someone else has the television on he will watch, but he is not allowed to turn on the television because he does not pay for electricity. (AR 42-43.) Plaintiff has a Facebook page that he can access by going to the library. (AR 44-45.) Plaintiff last visited the page four or five months prior to the hearing. (AR 44.)

Plaintiff attends church on Sundays and an HIV group on Thursdays. (AR 45, 47.) Plaintiff receives food stamps and does his shopping at Walmart. (AR 46.) Plaintiff walks to where he needs to go or on occasion will take the bus. (AR 46.) Plaintiff is unable to work because his self-esteem is shot. (AR 47.)

An impartial vocational expert ("VE") Jacklyn A. Benson-Dehaan also testified at the hearing. (AR 52-56.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.
- Plaintiff has not engaged in substantial gainful activity since June 1, 2006 the alleged onset date.
- Plaintiff has the following severe impairments: human immunodeficiency virus, diabetes mellitus, chronic liver disease, cirrhosis, affective disorder, and drug abuse.
- Plaintiff does not have any impairment or combination of impairments that meets or medically equals the severity of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work except that he can lift or carry 50 pound occasionally and 25 pounds frequently; stand and/or walk 6 hours in an 8 hour workday with regular breaks; sit 6 hours in an 8 hour workday with regular breaks; and occasionally climb ramps and stairs. Plaintiff is precluded from working around hazards such as dangerous moving machinery; climbing ladders, ropes, or scaffolds; or operating equipment such as a motor vehicle. Plaintiff is limited to simple and routine repetitive tasks and occasional public contact.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on March 18, 1965 and was 41 years old on the alleged disability onset date.

- Plaintiff has a limited education and is able to communicate in English.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from June 1, 2006 through the date of the decision.

(AR 11-21.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is

4

disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

In this appeal, Plaintiff challenges only the mental health findings contending that the ALJ erred by improperly rejecting the opinion of examining physician, Dr. Philip Cushman. Specifically, Plaintiff contends that the ALJ rejected the findings that Plaintiff would have difficulties working a normal workday in part due to fatigue and will have difficulties in dealing with the usual stressors encountered in a competitive work environment. Defendant responds that the ALJ properly analyzed Drs. Cushman and Lampe's opinion and considered the record as a whole in determining Plaintiffs' residual functional capacity.

### A. Adverse Credibility Finding

Defendants argue that in determining Plaintiff's residual functional capacity the ALJ provided a proper basis for determining that Plaintiff's complaints were not credible. Defendants contend that the ALJ properly evaluated Plaintiff's credibility and did not include those limitations that were not supported by the medical evidence.

The ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.[2] Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). Plaintiff did not challenge the adverse credibility finding, which is likely due to the fact that the ALJ provided clear and convincing reasons supported by substantial evidence in the record to find that Plaintiff's subjective complaints are less than fully credible.

In assessing the claimant's credibility, the ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;

---

[2] Defendant argues that the clear and convincing standard should not apply to evaluate the claimant's testimony, however the Ninth Circuit has recently rejected this argument in Garrison v. Colvin, 759 F.3d 995, 1015 n.18 (9th Cir. 2014).

[and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

Plaintiff claimed to have a history of depression for many years and difficulty dealing with other people due to depression but has not received any treatment for his mental health issues. (AR 14, 15, 47.) However, Plaintiff also testified that he attends church for two hours on Sundays and meetings for HIV patients. (AR 14, 45, 47, 257.) Plaintiff reported engaging in social activities such as visiting with others. (AR 15, 257.) The ALJ properly considered Plaintiff's failure to seek mental health treatment. Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ noted that Plaintiff's failure to follow treatment recommendations demonstrates a possible unwillingness to do what is necessary to improve his condition or is an indication that his symptoms are not as severe as he purports. (AR 15, 403, 404, 438, 459, 550, 592, 700.) See Molina, 674 F.3d at 1113. Plaintiff minimalized and misreported his drug usage. (AR 15-16, 37-38, 319, 348, 476, 532, 591-592, 698, 792, 815, 818.) These inconsistent statements cast doubt on his credibility. (AR 16.) The ALJ properly considered Plaintiff's inconsistent statements regarding his drug use. Thomas, 278 F.3d at 959.

Plaintiff alleged that he needed assistance with household chores which is inconsistent with his statements at the hearing. (AR 14.) Plaintiff also worked as an in home care provider for a number of months after he alleged he was disabled. (AR 15, 32-33, 320.) This work activity can be quite demanding both physically and emotionally and indicates that Plaintiff's daily activities have been, at least at times, greater than Plaintiff is reporting. (AR 15.) The ALJ properly considered Plaintiff's daily activities in determining credibility. Burch, 400 F.3d at 681.

### B. Mental Residual Functional Capacity

Plaintiff contends that ALJ erred by failing to include Dr. Cushman's findings that Plaintiff would have difficulties working a normal workday, in part due, to fatigue and would have difficulties in dealing with the usual stressors encountered in a competitive work

7

environment.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Andrews, 53 F.3d at 1041.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

1. Fatigue

As relevant here, the ALJ found that Plaintiff had moderate restrictions in his activities of daily living and concentration, persistence, and pace. (AR 13.) Plaintiff had mild difficulties in social functioning. (AR 13.) The ALJ found that Plaintiff could only perform jobs involving simple and routine repetitive tasks and was limited to occasional public contact. (AR 13.)

1 Plaintiff contended that he was unable to work due to fatigue caused by his HIV. (AR 14.) Yet, Plaintiff was diagnosed with HIV in 2005 and his condition has been stable with test results within the normal range. (AR 15, 16.)

Dr. Cushman saw Plaintiff on April 11, 2012 for a psychological consultative examination. (AR 18, 588-595.) Plaintiff reported that he did not sleep well during the night and did not nap during the day. (AR 590.) Plaintiff was noted to have effeminate and flamboyant mannerisms and was generally cooperative throughout the interview and testing. (AR 589.) His speech was irregular and dramatic and he provided a lot of irrelevant personal information. (AR 590.)

Plaintiff was found to be in the low-average intelligence range. (AR 593.) Based on his examination findings, Dr. Cushman opined that Plaintiff did not appear capable of performing any detailed or complex tasks in a work setting, but was capable of performing simple and repetitive tasks in a work setting. (AR 594.) Plaintiff might have difficulties with regular attendance and consistent participation involving transportation and his homeless situation, which if resolved he would regularly attend and consistently participate. (AR 594.) Plaintiff may have difficulties working a normal workday or workweek due in part to fatigue. (AR 594.) Plaintiff might need special or additional supervision in managing interpersonal relationships and substance abuse. (AR 594.) Plaintiff is capable of following simple verbal instructions from supervisors. (AR 594.) Plaintiff will run into some difficulty getting along with supervisors, coworkers and the general public over any length of time and will have difficulty dealing with the usual stressors encountered in a competitive work environment. (AR 594.)

Although Plaintiff alleges that the ALJ ignored Dr. Cushman's finding that Plaintiff may have difficulties working a normal workday or workweek due in part to fatigue, the ALJ considered Plaintiff's allegations and found that it would not limit Plaintiff's ability to work. The ALJ pointed to substantial evidence in the record to support such a finding.

The ALJ considered the January 27, 2007, mental health analysis by Dr. Stefan Lampe. (AR 18, 319-321.) Plaintiff denied any current severe depressive symptomatology. (AR 319.) Plaintiff was taking care of his sick partner at this time. (AR 320.) Plaintiff's mood was mildly

depressed and affect was mildly restricted without lability. (AR 320.) Dr. Lampe opined that Plaintiff was a gentleman with multiple stressors who developed mild depression and would benefit from treatment. (AR 320.) Dr. Lampe found that Plaintiff could relate and interact with supervisors and co-workers; understand, remember and carry out simple as well as complex instructions; deal with the public; maintain concentration and attention for two-hour increments; and from a psychiatric standpoint would be able to withstand the stress and pressure associated with an eight-hour workday on an ongoing basis. (AR 320-321.)

The ALJ also considered the February 2, 2007 consultative examination by Dr. Madireddi. (AR 17, 324-325.) Plaintiff reported getting fatigued. (AR 324.) After conducting his examination, Dr. Madireddi opined that Plaintiff should observe suitable safety precautions due to his HIV, but there were no other restrictions. (AR 325.)

Dr. Madireddi conducted a second examination on April 5, 2012. (AR 17, 582-585.) The record notes "Rombergism is not tolerated most likely because of overall fatigue although he did walk 3 miles to keep this appointment." (AR 584.) Dr. Madireddi stated that "[a]llegations of fatigue may be due to any or all of his diagnoses including HIV, but he is not getting any specific HIV medications." (AR 585.) Dr. Madireddi opined that Plaintiff could sit, stand, and or walk for six hours in an eight hour workday and did not need any postural restrictions. (AR 585.)

The ALJ also considered two questionnaires completed by Dr. Diep. (AR 18.) On May 15, 2012, Dr. Diep reported that Plaintiff did not appear visibly fatigued and opined that Plaintiff had no functional limitations. (AR 602.) On May 29, 2012, Dr. Diep reported that Plaintiff did not appear visually fatigued. (AR 269.) There were no indications or findings of a diagnosed mental impairment. (AR 270.) Dr. Diep only found some lifting and carrying limitations. (AR 269.)

Review of the medical record shows very few reports of fatigue. On June 26, 2008, Plaintiff reported some fatigue. (AR 408.) On November 13, 2011, the medical record notes fatigue. (AR 430.) On November 27, 2012, Plaintiff appeared with aseptic meningitis and the record notes extreme fatigue having not slept all night due to pain. (AR 648.)

The Court finds that the ALJ did not err by failing to adopt Dr. Cushman's finding that Plaintiff may have difficulties working a normal workday or workweek due in part to fatigue.

### 2. Adapting to Stress in Workplace

Similarly, the Court finds that the ALJ did not err failing to adopt Dr. Cushman's finding that Plaintiff will have difficulty dealing with the usual stressors encountered in a competitive work environment. (AR 594.)

While Dr. Cushman opined that Plaintiff would have difficulty dealing with stress in the workplace, he did not indicate the severity of the impairment. The ALJ is to determine credibility, resolve conflicts in testimony, and resolve ambiguities; however his findings must be supported with specific and rational reasons. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen , 779 F2d 1403, 1408 (9th Cir. 1989)).

It was for the ALJ to review the evidence to determine from the record how Plaintiff's ability to deal with stress in the workplace would affect his ability to work. The ALJ summarized the medical record as set forth above. The ALJ considered that Dr. Lampe found that from a psychiatric standpoint Plaintiff would be able to withstand the stress and pressure associated with an eight-hour workday on an ongoing basis. (AR 320-321.) Although the agency physician, Dr. Coleman, considered Dr. Cushman's opinion and found that Plaintiff's adaptation would be mildly limited (AR 88), both Dr. Lampe and Dr. Cushman assessed Plaintiff's Global Assessment Functioning score at 60. (AR 17, 18, 320, 594.) The ALJ found that this indicates that Plaintiff's symptoms are moderate, which is generally consistent with the objective clinical findings and Plaintiff's testimony. (AR 19.)

The Court finds that the ALJ properly addressed those limitations set forth in Dr. Cushman's opinion by finding that Plaintiff would be limited to simple and routine repetitive tasks and limited to occasional contact with the public.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not improperly reject the opinion of examining physician, Dr. Philip Cushman. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ruben Holguin. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **May 9, 2016**

UNITED STATES MAGISTRATE JUDGE